UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
LONDON

Eastern District of Kentucky
F I L E D
OCT 0 4 2006
AT LONDON
LESLIE G. WHITMER
CLERK U.S. DISTRICT COURT

CIVIL ACTION NO. 06-7-GWU

ANDY FAULKNER,                                                              PLAINTIFF,

VS.                **MEMORANDUM OPINION**

JO ANNE B. BARNHART,
COMMISSIONER OF SOCIAL SECURITY,                    DEFENDANT.

**INTRODUCTION**

The plaintiff brought this action to obtain judicial review of an administrative denial of his application for Disability Insurance Benefits (DIB). The appeal is currently before the Court on cross-motions for summary judgment.

**APPLICABLE LAW**

The Sixth Circuit Court of Appeals has set out the steps applicable to judicial review of Social Security disability benefit cases:

1. Is the claimant currently engaged in substantial gainful activity? If yes, the claimant is not disabled. If no, proceed to Step 2. See 20 C.F.R. 404.1520(b), 416.920(b).

2. Does the claimant have any medically determinable physical or mental impairment(s)? If yes, proceed to Step 3. If no, the claimant is not disabled. See 20 C.F.R. 404.1508, 416.908.

3. Does the claimant have any severe impairment(s)--i.e., any impairment(s) significantly limiting the claimant's physical or mental ability to do basic work activities? If yes, proceed to Step 4. If no, the claimant is not disabled. See 20 C.F.R. 404.1520(c), 404.1521, 416.920(c), 461.921.

1

Faulkner

4. Can the claimant's severe impairment(s) be expected to result in death or last for a continuous period of at least 12 months? If yes, proceed to Step 5. If no, the claimant is not disabled. See 20 C.F.R. 404.920(d), 416.920(d).

5. Does the claimant have any impairment or combination of impairments meeting or equaling in severity an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1 (Listing of Impairments)? If yes, the claimant is disabled. If no, proceed to Step 6. See 20 C.F.R. 404.1520(d), 404.1526(a), 416.920(d), 416.926(a).

6. Can the claimant, despite his impairment(s), considering his residual functional capacity and the physical and mental demands of the work he has done in the past, still perform this kind of past relevant work? If yes, the claimant was not disabled. If no, proceed to Step 7. See 20 C.F.R. 404.1520(e), 416.920(e).

7. Can the claimant, despite his impairment(s), considering his residual functional capacity, age, education, and past work experience, do other work--i.e., any other substantial gainful activity which exists in the national economy? If yes, the claimant is not disabled. See 20 C.F.R. 404.1505(a), 404.1520(f)(1), 416.905(a), 416.920(f)(1).

Garner v. Heckler, 745 F.2d 383, 387 (6th Cir. 1984).

Applying this analysis, it must be remembered that the principles pertinent to the judicial review of administrative agency action apply. Review of the Commissioner's decision is limited in scope to determining whether the findings of fact made are supported by substantial evidence. Jones v. Secretary of Health and Human Services, 945 F.2d 1365, 1368-1369 (6th Cir. 1991). This "substantial evidence" is "such evidence as a reasonable mind shall accept as adequate to

2

support a conclusion;" it is based on the record as a whole and must take into account whatever in the record fairly detracts from its weight. Garner, 745 F.2d at 387.

One of the detracting factors in the administrative decision may be the fact that the Commissioner has improperly failed to accord greater weight to a treating physician than to a doctor to whom the plaintiff was sent for the purpose of gathering information against his disability claim. Bowie v. Secretary, 679 F.2d 654, 656 (6th Cir. 1982). This presumes, of course, that the treating physician's opinion is based on objective medical findings. Cf. Houston v. Secretary of Health and Human Services, 736 F.2d 365, 367 (6th Cir. 1984); King v. Heckler, 742 F.2d 968, 973 (6th Cir. 1984). Opinions of disability from a treating physician are binding on the trier of fact only if they are not contradicted by substantial evidence to the contrary. Hardaway v. Secretary, 823 F.2d 922 (6th Cir. 1987). These have long been well-settled principles within the Circuit. Jones, 945 F.2d at 1370.

Another point to keep in mind is the standard by which the Commissioner may assess allegations of pain. Consideration should be given to all the plaintiff's symptoms including pain, and the extent to which signs and findings confirm these symptoms. 20 C.F.R. Section 404.1529 (1991). However, in evaluating a claimant's allegations of disabling pain:

> First, we examine whether there is objective medical evidence of an underlying medical condition. If there is, we then examine: (1) whether objective medical evidence confirms the severity of the alleged

Faulkner

> pain arising from the condition; or (2) whether the objectively established medical condition is of such a severity that it can reasonably be expected to produce the alleged disabling pain.

Duncan v. Secretary of Health and Human Services, 801 F.2d 847, 853 (6th Cir. 1986).

Another issue concerns the effect of proof that an impairment may be remedied by treatment. The Sixth Circuit has held that such an impairment will not serve as a basis for the ultimate finding of disability. Harris v. Secretary of Health and Human Services, 756 F.2d 431, 436 n.2 (6th Cir. 1984). However, the same result does not follow if the record is devoid of any evidence that the plaintiff would have regained his residual capacity for work if he had followed his doctor's instructions to do something or if the instructions were merely recommendations. Id. Accord, Johnson v. Secretary of Health and Human Services, 794 F.2d 1106, 1113 (6th Cir. 1986).

In reviewing the record, the Court must work with the medical evidence before it, despite the plaintiff's claims that he was unable to afford extensive medical work-ups. Gooch v. Secretary of Health and Human Services, 833 F.2d 589, 592 (6th Cir. 1987). Further, a failure to seek treatment for a period of time may be a factor to be considered against the plaintiff, Hale v. Secretary of Health and Human Services, 816 F.2d 1078, 1082 (6th Cir. 1987), unless a claimant simply has no way to afford or obtain treatment to remedy his condition, McKnight v. Sullivan, 927 F.2d 241, 242 (6th Cir. 1990).

Faulkner

Additional information concerning the specific steps in the test is in order.

Step six refers to the ability to return to one's past relevant category of work. Studaway v. Secretary, 815 F.2d 1074, 1076 (6th Cir. 1987). The plaintiff is said to make out a prima facie case by proving that he or she is unable to return to work. Cf. Lashley v. Secretary of Health and Human Services, 708 F.2d 1048, 1053 (6th Cir. 1983). However, both 20 C.F.R. 416.965(a) and 20 C.F.R. 404.1563 provide that an individual with only off-and-on work experience is considered to have had no work experience at all. Thus, jobs held for only a brief tenure may not form the basis of the Commissioner's decision that the plaintiff has not made out its case. Id. at 1053.

Once the case is made, however, if the Commissioner has failed to properly prove that there is work in the national economy which the plaintiff can perform, then an award of benefits may, under certain circumstances, be had. E.g., Faucher v. Secretary of Health and Human Services, 17 F.3d 171 (6th Cir. 1994). One of the ways for the Commissioner to perform this task is through the use of the medical vocational guidelines which appear at 20 C.F.R. Part 404, Subpart P, Appendix 2 and analyze factors such as residual functional capacity, age, education and work experience.

One of the residual functional capacity levels used in the guidelines, called "light" level work, involves lifting no more than twenty pounds at a time with frequent lifting or carrying of objects weighing up to ten pounds; a job is listed in this category

5

if it encompasses a great deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls; by definition, a person capable of this level of activity must have the ability to do substantially all these activities. 20 C.F.R. 404.1567(b). "Sedentary work" is defined as having the capacity to lift no more than ten pounds at a time and occasionally lift or carry small articles and an occasional amount of walking and standing. 20 C.F.R. 404.1567(a), 416.967(a).

However, when a claimant suffers from an impairment "that significantly diminishes his capacity to work, but does not manifest itself as a limitation on strength, for example, where a claimant suffers from a mental illness . . . manipulative restrictions . . . or heightened sensitivity to environmental contaminants . . . rote application of the grid [guidelines] is inappropriate . . ." Abbott v. Sullivan, 905 F.2d 918, 926 (6th Cir. 1990). If this non-exertional impairment is significant, the Commissioner may still use the rules as a framework for decision-making, 20 C.F.R. Part 404, Subpart P, Appendix 2, Rule 200.00(e); however, merely using the term "framework" in the text of the decision is insufficient, if a fair reading of the record reveals that the agency relied entirely on the grid. Ibid. In such cases, the agency may be required to consult a vocational specialist. Damron v. Secretary, 778 F.2d 279, 282 (6th Cir. 1985). Even then, substantial evidence to support the Commissioner's decision may be produced through reliance on this expert testimony only if the hypothetical question given to the expert accurately portrays the plaintiff's

physical and mental impairments. <u>Varley v. Secretary of Health and Human Services</u>, 820 F.2d 777 (6th Cir. 1987).

## DISCUSSION

The administrative law judge (ALJ) found that Faulkner suffered from a dysthymic disorder, polysubstance abuse in full remission,[1] chronic back pain with a compression fracture at L3 and a history of fusion surgery at L4-5. (Tr. 14). He was capable of no more than a limited range of light level work and, thus, was unable to perform his past relevant work (Tr. 19). However, significant numbers of alternative jobs existed which a person of that vocational profile could perform, according to a vocational expert (VE). (Tr. 20, 21). Thus, the claim for benefits was denied. (Tr. 21).

Several records in the transcript predate the 2004 alleged onset date. In mid-2001, Faulkner was admitted to Baptist Regional Medical Center with a diagnosis of opiate dependence (reportedly escalating after a car wreck and back surgery), a history of alcohol dependence and cannabis abuse; he signed out against medical advice four days later. (Tr. 123, 124). The interview and physical examination done on admission to the detoxification unit had revealed "average and better" intellect and no neurological abnormalities which might relate to the back or neck, but some agitation and tearfulness. (Tr. 125, 126). The plaintiff was also seen at Corbin

---

[1] Substance abuse is no longer a proper basis for an award of benefits. See Publ. L. 104-121.

7

Faulkner

Professional Associates in the period between late 2001 and late 2003; the plaintiff was put in a methadone program (Tr. 198) for opiate withdrawal (Tr. 191), which was the primary focus of treatment albeit there was one lone reference to depression made (Tr. 203). A physical examination by the Associates staff in early 2003, when the plaintiff was in Phase 3/4 of the program (Tr. 196), had indicated normal physical findings except for obesity. (Tr. 187). In May, 2003, the plaintiff had been seen at the Whitley County Health Department where his PPD was positive and he was placed on preventative therapy for tuberculosis; however, he was not contagious and had "no restrictions." (Tr. 142). The plaintiff apparently began to seek treatment from Dr. Bernard Moses shortly before this, also in 2003; aside from sinusitis, a notation of hypertension and spots on the skin on his lower legs, the focus was on the plaintiff's obesity and need for diet and exercise. (Tr. 300). The plaintiff returned only once more in 2003 for treatment, for treatment of his sinusitis the following day (Tr. 299). Thus, the medical records prior to the alleged onset date in 2004 focus only on drug dependence and obesity and no physician suggested specific activity limitations.

In January, 2004 the plaintiff was involved in a motor vehicle accident. (Tr. 144, 149). The plaintiff was said to have an acute anterior compression fracture at L3 (Tr. 157, 158, 164, 166) as well as a nasal bone fracture (Tr. 164). The next month, the plaintiff underwent an MRI of the lumbar spine which showed a central compression fracture at L3, post operative changes at L4-5 and degenerative disc

8

changes at L5-S1; the CSF spaces around the thecal sac were reportedly obliterated at L3-4. (Tr. 169-170).

Moses referred him to Dr. Tibbs, who had reportedly done the prior back surgery in 1998 (Tr. 172, 298). Tibbs noted that the MRI had shown an acute L3 compression fracture and bone edema, and stated that the plaintiff was neurologically intact so that no surgical intervention was warranted and he apparently discussed Vocational Rehabilitation as an option with the patient (Tr. 172-173).

The plaintiff did not return to Moses until late June, when it was noted "lost job and had MVA in January seeking disability" and no findings whatsoever relating to the neurological or musculoskeletal system; morbid obesity and fatigue were the only diagnoses. (Tr. 297). In the next six office visits, through the end of 2004, Moses noted abnormal findings concerning the plaintiff's back on only two occasions, both times with vagueness (e.g., "decreased range of motion lumbar spine and hips" at Tr. 294). On an "Acute Illness Note" where the plaintiff was described as "chronic disabled," the musculoskeletal system was described as normal, no neurological findings were described, and the history indicates that the plaintiff came to the doctor that day since he "needs an excuse to keep insurance." (Tr. 293). Another such note, in November 23, 2004, the same findings were made. (Tr. 292). Thus, there were multiple grounds to discount Moses' disability statements.

9

Faulkner

Medical Reviewer Kenneth Phillips completed a Residual Functional Capacity Assessment form indicating that the plaintiff could perform light work with restrictions on climbing, stooping and crawling (Tr. 301-308), fewer restrictions than were included in the hypothetical question with the vocational expert.

Thus, the <u>physical</u> restrictions considered by the ALJ appear to have been adequate.

The plaintiff argues that the ALJ improperly considered the plaintiff's musculoskeletal pain. No physician appears to have <u>independently</u> assessed the plaintiff's pain as "severe" and several referenced Vocational Rehabilitation. At the time he was seen by Dr. Tibbs, he reported being on no pain medication--just methadone (for his substance abuse), Paxil (for his psychological problems) and INH (as a preventative for tuberculosis). (Tr. 172). As noted by the ALJ, his treatment has been essentially routine and conservative, there was no indication he was not neurologically intact, he had not seen a neurosurgeon in over a year, he did not use a pain control device and had never been referred for pain management evaluation. (Tr. 18). As also noted by the ALJ, the plaintiff had told one examiner that he prepared simple meals, helped care for his baby and drove (Tr. 16), activities not necessarily consistent with the experiencing of disabling pain.

As for the plaintiff's mental restrictions, the undersigned notes that Examiner Pamela Starkey found that although the plaintiff's substance was in full sustained remission, he had dysthymia and a probable history of a panic disorder. (Tr. 179).

10

Faulkner

A GAF (Tr. 179) consistent with moderate symptoms as per the <u>Diagnostic and Statistical Manual of Mental Disorders</u> (4th Ed.) (DSM-IV) was cited and the narrative cited only mild difficulty regarding simple instructions on dealing with pressure and mild to moderate difficulty with pace and attention (Tr. 180). "With effective treatment, he could be rendered psychologically amenable to job training and/or public employment efforts in three to six months." (Tr. 180).

Medical Reviewer Ann Demaree noted <u>only</u> moderate limitations in the ability to respond to changes in the work setting (Tr. 335-337), citing among other evidence the consultative examiner's opinion (Tr. 339). A similar opinion was voiced by Medical Reviewer Thompson Prout. (Tr. 340-343).

Given the hypothetical question's reference to a limitation to simple, repetitive work, a fair <u>to poor</u> ability to maintain attention and concentration and adjust to changes in the workplace (Tr. 378-379), and in view of the plaintiff's failure to focus on any potential inconsistency in the mental restrictions, the mental factors were adequate.

This the _4_ day of October, 2006.

G. WIX UNTHANK
SENIOR JUDGE

11